UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| ARTHUR L. KELLY | CIVIL ACTION NO. 09-1151-P |
| VERSUS | JUDGE STAGG |
| CADDO CORRECTIONAL CENTER, ET AL. | MAGISTRATE JUDGE HORNSBY |

### REPORT AND RECOMMENDATION

In accordance with the standing order of this court, this matter was referred to the undersigned Magistrate Judge for review, report and recommendation.

### STATEMENT OF CLAIM

Before the Court is a civil rights complaint filed in forma pauperis by pro se plaintiff Arthur L. Kelly ("Plaintiff"), pursuant to 42 U.S.C. § 1983. This complaint was received and filed in this Court on July 8, 2009. Plaintiff claims his civil rights were violated by prison officials while incarcerated at the Caddo Correctional Center in Shreveport, Louisiana. He names the Caddo Correctional Center, Deputy Kline, Harold Player, Robert B. Wyche, Steve Prator, and EMT Fredieu as defendants.

Plaintiff claims that on April 29, 2009, Deputy Kline placed him on lock-down. He claims that at the time of his infraction, he became upset. He claims his blood pressure was high before the incident and continued to rise after he was in his cell. Plaintiff claims that after he was in his cell, Deputy Kline and EMT Fredieu did not check to see if he needed medical attention or had tried to escape.

Plaintiff claims Deputy Kline and EMT Fredieu denied him his evening blood pressure medication. He claims Deputy Kline did not notice him for his 8:30 p.m. medication because he forgot what cell he had placed him in. He claims his blood pressure was 138/100. He claims he did not sign a medical refusal. He claims he did not receive any medication for 24 hours and because of this his blood pressure went even higher. Plaintiff admits that he did not request the medication.

Plaintiff claims Harold Player stated his complaint was unfounded in the first step response to his grievance filed in the administrative remedy procedure because he did not want Deputy Kline to apologize to him. He claims that in the second step response to his grievance, Commander Robert Wyche did not want to override the decision of Harold Player so he did not answer his question about deputies being trained to respond to inmates for medical and security reasons. Plaintiff claims EMT Fredieu agreed in the decision of the other Defendants because he wanted to cover his job. He claims Steve Prator should have investigated the matter himself in the third step of the administrative remedy procedure instead of his chief deputy or designee.

Plaintiff claims he notified the medical staff that the medication he received for his high blood pressure reacted with his system. He claims the medication was not the proper treatment for his condition. He claims he lost weight and needed to be on a high protein diet because he was spilling protein into his urine. He claims medical tests should have conducted before placing him on blood pressure medication.

Plaintiff admits he was seen in the infirmary on May 7, 2009, June 25, 2009, July 15,

2009, July 16, 2009, August 18, 2009, and August 20, 2009. He claims he complained that his medication did not agree with him. He claims he stopped taking his medications so he would be rescheduled to see the doctor. He claims a member of the medical staff informed Commander Wyche that he was not taking his medication. Plaintiff claims Commander Wyche used this as an excuse to retaliate against him for not stopping his grievance at the third step in the administrative remedy procedure and had him placed in mental health. Plaintiff claims Commander Wyche stated he placed him in mental health because he was trying to kill himself by not taking his medication.

Plaintiff claims he suffered humiliation when he was placed in mental health. He claims he was placed in a cell with two other inmates and they were only allowed to wear paper gowns. He claims the gowns tore and exposed private body parts. Plaintiff claims he was examined by a doctor who determined he was not suicidal and had him transferred back to the general population.

As relief, Plaintiff seeks monetary compensation.

## LAW AND ANALYSIS

**Medical Care Claims**

Plaintiff claims that on April 29, 2009, he was denied his evening dose of blood pressure medication. He also claims the medication he received for his high blood pressure was not the proper treatment for his condition.

Plaintiff filed this claim pursuant to 42 U.S.C. § 1983 of the Civil Rights Act which provides redress for persons "deprived of any rights, privileges or immunities" by a person

acting under color of state law. The particular right protected under 42 U.S.C. § 1983 in matters which concern alleged denial of or inadequate medical care is the Eighth Amendment prohibition against cruel and unusual punishment.

The lack of proper inmate medical care rises to the level of a constitutional deprivation under the Eighth Amendment of the United States Constitution only if the evidence shows that the prison officials showed "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976); See also Farmer v. Brennan, 511 U.S. 825, 835, 114 S. Ct. 1970, 1978 (1994). It is only deliberate indifference, "an unnecessary and wanton infliction of pain" or an act "repugnant to the conscience of mankind," that constitutes conduct proscribed by the Eighth Amendment. Estelle, 429 U.S. at 105-06, 97 S. Ct. at 292; See also Gregg v. Georgia, 428 U.S. 153, 96 S. Ct. 2909 (1976). Further, the plaintiff must establish that the defendants possessed a culpable state of mind. See Wilson v. Seiter, 501 U.S. 294, 297-302, 111 S. Ct. 2321, 2323-27 (1991); Farmer, 511 U.S. at 838-47, 114 S. Ct. at 1979-84. A delay in medical care will violate the Eight Amendment only if the delay is based on deliberate indifference and results in substantial harm. Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993). In addition, disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a claim for Eighth Amendment indifference to medical needs. See Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

In this case, after a thorough review of Plaintiff's complaint, read in a light most favorable to him, the Court finds that the facts alleged do not support a finding of deliberate

indifference to serious medical needs. To the contrary, the record demonstrates that Defendants were attentive to the medical needs of Plaintiff. It has been consistently held that an inmate who has been examined by medical personnel fails to set forth a valid showing of deliberate indifference to serious medical needs. Norton v. Dimazana, 122 F.2d 286, 292 (5th Cir. 1997); Callaway v. Smith County, 991 F. Supp. 801, 809 (E.D. Tex. 1998); Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992). Plaintiff admits that Deputy Kline and EMT Fredieu were negligent in not giving him his evening dose of medication because they forgot what cell he was in. He does not allege Defendants were deliberately indifferent to his serious medical needs. Plaintiff admits he was seen by the medical staff in the infirmary on May 7, 2009, June 25, 2009, July 15, 2009, July 16, 2009, August 18, 2009, and August 20, 2009. He admits he was prescribed medication for his high blood pressure. However, he disagrees with the medication that he was prescribed. Plaintiff's complaint is devoid of factual allegations that would tend to show Defendants acted with a culpable state of mind or that their actions were "unnecessary and wanton." Furthermore, Plaintiff does not allege that the delay in receiving his blood pressure medication resulted in any substantial harm.

Plaintiff's allegations, if accepted as true, may amount to a state law claim for negligence, a tort. However, mere negligence, neglect or medical malpractice does not amount to a denial of a constitutional right as these actions on the part of Defendants do not rise to the level of a constitutional tort. See Daniels v. Williams, 474 U.S. 327, 329-30, 106 S. Ct. 662, 664 (1986); Estelle, 429 U.S. at 106, 97 S. Ct. at 292; Lewis v. Woods, 848 F.2d

649, 651 (5th Cir. 1988). The fact that Plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act. See Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). Prisoners are not constitutionally entitled to the best medical care that money can buy. See Mayweather v. Foti, 958 F.2d. 91 (5th Cir. 1992). Accordingly, Plaintiff's medical care claim should be dismissed with prejudice as frivolous.

**Administrative Remedy Procedure Claims**

Plaintiff claims Harold Player, Commander Robert Wyche, EMT Fredieu, and Steve Prator improperly responded to the grievance he filed in the administrative remedy procedure. Inmates do not have a constitutionally protected right to a prison administrative grievance procedure. See Oladipupo v. Austin, et al., 104 F.Supp.2d 626 (United States District Court, Western District of Louisiana 4/24/00); Brown v. Dodson, et al., 863 F. Supp. 284 (United States District Court, Western District of Virginia 6/2/94); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991). A prison official's failure to comply with a state administrative grievance procedure is not actionable under Section 1983 because a state administrative grievance procedure does not confer any substantive constitutional right upon prison inmates. Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988), cert. denied, 488 U.S. 898, 109 S.Ct. 242, 102 L.Ed.2d 231. Furthermore, state administrative grievance procedures are separate and distinct from state and federal legal procedures. Thus, a prison official's failure to comply with state administrative grievance procedures does not compromise an inmate's right of access to the courts. Flick, supra. Thus, insofar as Plaintiff

alleges that the defendants failed to comply with a prison administrative grievance procedure, those allegations, standing alone, do not provide an arguable basis for recovery under Section 1983. Accordingly, Plaintiff's administrative remedy procedure claim should be dismissed with prejudice as frivolous.

**Retaliation Claims**

Plaintiff claims Commander Wyche retaliated against him and placed him in mental health because he did not end his grievance at the third step. To state a claim of retaliation an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident–such as the placement in mental health-would not have occurred. Woods v. Smith, 60 F.3d 1161 (5th Cir. 1995), citing Mt. Healthy City School Board District Bd. Of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

The retaliatory motive alleged by Plaintiff is entirely conclusory as he provides no specific allegations showing that "but for" this motive he would not have been written up for a rule violation. In fact, he admits that he refused to take his medication and Commander Wyche stated he placed him in mental health because he believed he was suicidal. Accordingly, Plaintiff's retaliation claims should be dismissed with prejudice as frivolous.

**Classification Claims**

Plaintiff complains that he was placed in mental health and humiliated because of this classification. This is not a claim that this court can resolve. Federal courts should not, under the guise of enforcing constitutional standards, assume the superintendence of state

prison administration. See Jones v. Diamond, 636 F.2d 1364, 1368 (5th Cir. 1981) (en banc) (overruled on other grounds). Thus, this court accords state prison administrators wide-ranging deference to adopt and to execute policies and practices that are needed to maintain and preserve order, discipline, and security in prison. See Bell v. Wolfish, 441 U.S. 520, 547 (1979).

The classification of prisoners is such a practice that is left to the discretion of prison officials. See McCord v. Maggio, 910 F.2d 1248, 1250 (5th Cir. 1990). "It is well settled that '[p]rison officials must have broad discretion, free from judicial intervention, in classifying prisoners in terms of their custodial status'." McCord, 910 F.2d at 1250 (quoting Wilkerson v. Maggio, 703 F.2d 909 (5th Cir. 1983)).

In Louisiana, the classification of prisoners is the duty of the Department of Corrections and an inmate, such as Plaintiff, has no right to a particular classification. In addition, "speculative, collateral consequences of prison administrative decisions do not create constitutionally protected liberty interests." Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995) (citing Meachum v. Fano, 427 U.S. 215, 299 n.8, 96 S. Ct. 2532, 2540 n.8 (1976)). Thus, the prison officials' decision to place Plaintiff in mental health and the resulting consequences of such decision, do not give rise to constitutionally protected liberty interests. Accordingly, Plaintiff's classification claims are frivolous because they lack an arguable basis in law and in fact, and they should be dismissed with prejudice as frivolous.

## CONCLUSION

Because Plaintiff filed this proceeding in forma pauperis ("IFP"), if this Court finds Plaintiff's complaint to be frivolous, it may dismiss the complaint as such at any time, before or after service of process, and before or after answers have been filed. See 28 U.S.C. § 1915(e); Green v. McKaskle, 788 F.2d 1116, 1119 (5th Cir. 1986); Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). District courts are vested with extremely broad discretion in making a determination of whether an IFP proceeding is frivolous and may dismiss a claim as frivolous if the IFP complaint lacks an arguable basis either in law or in fact. See Hicks v. Garner, 69 F.3d 22 (5th Cir. 1995); Booker v. Koonce, 2 F.3d 114 (5th Cir. 1993); Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827 (1989).

For the reasons heretofore stated, it is recommended that Plaintiff's complaint be **DISMISSED WITH PREJUDICE** as frivolous under 28 U.S.C. § 1915(e).

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objection within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendations set forth above, within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking, on appeal, the proposed factual findings and legal conclusions that were accepted by the district court and that were not objected to by the aforementioned party. See Douglas v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

**THUS DONE AND SIGNED**, in chambers, in Shreveport, Louisiana, on this 12th day of July 2012.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE